139 F.3d 696
 98 Cal. Daily Op. Serv. 1912, 98 Daily Journal
D.A.R. 2691
Stanley PARETO; Elbert Bressie; Benjamin P. Liu; Vilja
Annamaria Fritzl; John McCullough; Edith Fritzl; Heidi W.
Moore; Gottfried Noel Fritzl; Wanda Hagan; Theodore
Hiatt; Shih Chi Chow; Shirley C. Chow; Marilou Atencio;
Anton Atencio; Gregory D. Shields; Eleanor M. Shields;
Estelle Eichenberger; Jack Lutzow; Moses Noble, Jr.;
Ernst Meyer; Phillip Yee; Theodore J. Saenger; Gayle I.
Saenger; Jack Block; Tae Ryong Kim; Chin Soon Kim; Frank
J. Schlessinger; Raymond Vernazza; Marion Gizzi; Chester
R. Williams; Angelo Ferro; Linda S. Williams; Roger R.
Franklin; John P. Hurabieli; Laverne Pareto; John Pareto;
Muriel P. Burd; Chae Woo Lee; Hai Ja Lew; Antonio
Panebianco; Cho Young Kugis; Gebhardt Kugis; Phyllis G.
Zerwick; John Hartung; Arthur Holsten; Eleanor Holsten;
Paul E. Kadden; Shirley J. Kadden; Thomas Kavanagh;
Cunningham Arizona, a Partnership, Plaintiffs-Appellants,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of
Barbary Coast National Bank, et al., Defendants,
Robert Wheeler; Dickerson Kearny; Paul Oliver; Robert
Imhoff, Defendants-Appellees.
 No. 97-16023.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 12, 1998.
Decided March 18, 1998.
 
 Nikolai Tehin, Reilly Atkinson, Tehin & Partners, San Francisco, CA, for Plaintiffs-Appellants.
 Daniel Glenn Lonergan, F.D.I.C., Washington, DC, for Defendants-Appellees; Jan T. Chilton, Lawrence A. Callaghan, Severson & Werson, San Francisco, CA, for the Defendants-Appellees.
 Appeal from the United States District Court for the Northern District of California; Marilyn H. Patel, District Judge, Presiding. D.C. No. CV-96-03139-MHP.
 Before: HUG, Chief Judge, and FERNANDEZ, and THOMAS, Circuit Judges.
 OPINION
 FERNANDEZ, Circuit Judge:
 
 
 1
 Stanley Pareto, and others in a group of former stockholders of Barbary Coast National Bank (hereafter collectively referred to as "Pareto") appeal the dismissal of a suit against certain of the bank's former directors and the Federal Deposit Insurance Corporation, the receiver for the bank. The district court dismissed the action on the basis that Pareto lacked standing. He appealed and we affirm.
 
 BACKGROUND
 
 2
 Pareto brought this action in state court against certain of Barbary Coast's former directors, alleging violations of the duties of care and loyalty under California Corporations Code section 309, and seeking punitive damages under California Civil Code section 3294. The state trial court denied the directors' demurrer and the state court of appeal then denied their petition for a writ of mandate. Subsequently, Pareto served the FDIC as a defendant. Once served, the FDIC removed the action to the United States District Court and then moved to dismiss for lack of standing and failure to state a claim. The directors also moved to dismiss. The district court granted the motion and dismissed the complaint without leave to amend.
 
 
 3
 Pareto alleged that: Barbary Coast's directors sought liquidation and merger of the bank with another financial institution. After rejecting the offer of one bona fide purchaser, which would have earned Pareto the book value of his shares, the directors unsuccessfully pursued a merger with Sunrise Bank of California. The directors failed to act with due diligence, because they knew or should have known that Sunrise Bank would be unable to consummate the transaction. After the merger attempt failed, the directors sought voluntary receivership. On May 19, 1994, the Office of the Comptroller of the Currency closed Barbary Coast and appointed the FDIC as receiver. The directors knew or should have known that this action would result in no value accruing to the bank's stockholders.
 
 
 4
 Pareto's first cause of action, brought "individually and derivatively," alleged that the directors carelessly and negligently breached their duty of care under California Corporations Code section 309 by failing to act with due diligence in the liquidation and merger process. Pareto also alleged that the directors misrepresented certain features of the Sunrise Bank merger deal and the due diligence process, with the intent to induce Pareto's approval, in pursuit of their own undisclosed personal gain. By these actions the directors failed to safeguard the assets and equity of the bank, failed to appropriately manage the operations of the bank including its assets, improperly placed the Bank into voluntary receivership, and failed to exercise due diligence and due care. As a result, Pareto was "deprived of sums due and owing ..., and of the loss of use and enjoyment of said sums, including but not limited to loss of [the] investment in Barbary Coast."
 
 
 5
 Pareto's second cause of action, again brought "individually and derivatively," realleged the acts, misrepresentations, and damages alleged in the first cause of action, but asserted a breach of the duty of loyalty, again under California Corporations Code section 309.
 
 JURISDICTION AND STANDARDS OF REVIEW
 
 6
 The district court had jurisdiction pursuant to 12 U.S.C. § 1819(b)(2)(B) and 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.
 
 
 7
 We review a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) de novo. See Cohen v. Stratosphere Corp., 115 F.3d 695, 700 (9th Cir.1997). We limit our review to the allegations of material facts set forth in the complaint, which we read in the light most favorable to the non-moving party and which, together with all reasonable inferences therefrom, we take to be true. See Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir.1996). However, conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss. See In Re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir.1996). We also review questions of standing and questions of statutory construction de novo. See Barrus v. Sylvania, 55 F.3d 468, 469 (9th Cir.1995).[1]
 
 DISCUSSION
 A. The Nature of the Claims
 
 8
 When all was said and done, Pareto's claims were for injury to Barbary Coast itself, which ultimately reduced the value of the stock. In other words, the action was "derivative, i.e., in the corporate right, [because] the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders." Jones v. H.F. Ahmanson & Co., 1 Cal.3d 93, 106, 460 P.2d 464, 470, 81 Cal.Rptr. 592, 598 (1969). We recognize that an action may lie both derivatively and individually based on the same conduct. See Sutter v. General Petroleum Corp., 28 Cal.2d 525, 530, 170 P.2d 898, 901 (1946). Thus, the mere presence of an injury to the corporation does not necessarily negate the simultaneous presence of an individual injury. Still, the pivotal question is whether the injury is incidental to or an indirect result of a direct injury to the corporation or to the whole body of its stock or property. See Jones, 1 Cal.3d at 107-108, 460 P.2d at 470-71, 81 Cal.Rptr. at 598-99. If a corporation suffers a direct injury to the whole of its assets, any corresponding injury to the value of an individual stockholder's shares (assuming the stockholder suffers no truly independent injury), is merely incidental to, or an indirect result of, the direct injury to the corporation's assets. An action by stockholders for that injury must be brought derivatively if at all.
 
 
 9
 Pareto's allegations--that the directors breached their duties of care and loyalty by failing to safeguard Barbary Coast's assets and equity, mismanaging its operations, improperly placing it into voluntary receivership, and failing to exercise due diligence during merger attempts--describe a direct injury to the bank, not the individual stockholders. Injury to the "use and enjoyment" of Pareto's stock or investment merely alleges depreciation of stock value, an indirect result of the injury to Barbary Coast which resulted in its closure. That is the language of derivative claims. See Shenberg v. DeGarmo, 61 Cal.App.2d 326, 330, 143 P.2d 74, 76 (1943) Anderson v. Derrick, 220 Cal. 770, 773, 32 P.2d 1078, 1079 (1934); see also Shell Petroleum, 709 F.2d at 595; Von Brimer v. Whirlpool Corp., 536 F.2d 838, 846 (9th Cir.1976); Erlich v. Glasner, 418 F.2d 226, 227 (9th Cir.1969).
 
 
 10
 Pareto did not allege injury to a right he possessed as an individual, separate and distinct from the injury to the value of the bank's stock and property due to its closure. Cf. Jones, 1 Cal.3d at 107, 460 P.2d at 470, 81 Cal.Rptr. at 598. He did not allege a majority stockholders' breach of a fiduciary duty to minority stockholders, which resulted in the majority stockholders retaining a disproportionate share of the corporation's ongoing value. See, e.g., Smith v. Tele-Communication, Inc., 134 Cal.App.3d 338, 343-44, 184 Cal.Rptr. 571, 573-74 (1982) (transaction manipulated to give majority, and not minority, stockholders tax benefits); Crain v. Electronic Memories & Magnetics Corp., 50 Cal.App.3d 509, 520-22, 123 Cal.Rptr. 419, 427-28 (1975) (only minority stock rendered worthless); Jones, 1 Cal.3d at 101-05, 108-12, 460 P.2d at 466-69, 471-74, 81 Cal.Rptr. at 594-97, 599-602 (same). Nor did he allege he was fraudulently induced to buy or sell stock. See, e.g., Harmsen v. Smith, 693 F.2d 932, 940-41 (9th Cir.1982); Fisher v. Pennsylvania Life Co., 69 Cal.App.3d 506, 511-13, 138 Cal. Rptr. 181, 184-85 (1977); Sutter, 28 Cal.2d at 530, 170 P.2d at 901. While Pareto does make vague allegations about misrepresentations that caused him to support the unsuccessful merger attempt and initiation of a receivership, his only injury from those misrepresentations was the devaluation of his stock when Barbary Coast was taken over by the FDIC. But that is an injury that fell on every stockholder, majority and minority alike, and fell on each on a per share basis.
 
 
 11
 In fine, this action is one against the former directors for allegedly delivering a fatal blow to the bank. It is clearly derivative, and that is all it is.
 
 B. FDIC'S Right to Shareholder Claims
 
 12
 Pareto's assertion that the FDIC did not accede to his derivative stockholder claims against the allegedly miscreant directors of the bank must founder on the rocks of 12 U.S.C. § 1821(d)(2)(A)(i), which is part of FIRREA.[2] That section states that the FDIC "shall, as conservator or receiver, and by operation of law, succeed to ... all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution...."
 
 
 13
 Plainly, the section vests all rights and powers of a stockholder of the bank to bring a derivative action in the FDIC. One of those rights or powers is the pursuit of the very claims asserted here. The FDIC can decide to bring an action against the directors for their wrongdoing, if any there was. See 12 U.S.C. § 1821(k). If stockholders have a right to demand corporate action, the corporation must have a duty to proceed. On the other hand, if they have the power to proceed against a third party for the corporation's benefit, that party will be liable to respond when they do so. See Wesley Newcomb Hohfeld, Some Fundamental Legal Conceptions As Applied In Judicial Reasoning, 23 Yale L.J. 16, 28-49 (1913). But, again, the statute has vested all stockholders' rights and powers in the FDIC itself. Perhaps with an eye on Hohfeldian analysis, id., Congress also covered privileges just to be sure that nothing was missed. In other words, Congress has transferred everything it could to the FDIC, and that includes a stockholder's right, power, or privilege to demand corporate action or to sue directors or others when action is not forthcoming.
 
 
 14
 Having read the section in that manner, we can bring our analysis to an end, unless, of course, the result would be absurd or impracticable. See Oregon Natural Resources Council, Inc., v. Kantor, 99 F.3d 334, 339 (9th Cir.1996). The result of our interpretation is neither absurd nor impracticable. Rather, it helps assure the expeditious and orderly protection of all who are interested in the bank by placing the pursuit of its rights, protection of its assets, and payment of its liabilities firmly in the hands of a single, congressionally designated agency.
 
 
 15
 A number of courts, which have considered the matter, have reached the selfsame conclusion. See FDIC v. American Casualty Co., 998 F.2d 404, 406 (7th Cir.1993); In re Southeast Banking Corp., 827 F.Supp. 742, 746 (S.D.Fla.1993), rev'd in part on other grounds, 69 F.3d 1539 (11th Cir.1995); cf. Bauer v. Sweeny, 964 F.2d 305, 307-308 (4th Cir.1992).
 
 
 16
 It is true that the cases are not uniform on this issue. Pareto primarily relies on Branch v. FDIC, 825 F.Supp. 384 (D.Mass.1993) for the opposite conclusion. The district court in that case recognized that the statute "would appear" to place all of the stockholders' rights in the FDIC. Id. at 404. It, however, pointed out that 12 U.S.C. § 1821(d)(11)(B) provides that if everyone else with an interest has been paid, any residual assets shall be distributed to the stockholders. From this the district court gathered that the stockholders must have some remaining rights and must, therefore, have a continuing right to pursue and protect the assets of the bank. See id. at 404-05. We agree that in construing a statute we must consider all of its parts. See Dole v. United Steelworkers of America, 494 U.S. 26, 35, 110 S.Ct. 929, 934, 108 L.Ed.2d 23 (1990); Higa v. Transocean Airlines, 230 F.2d 780, 784 (9th Cir.1955). But we cannot agree with Branch 's conclusion. The mere fact that any residue will go to the stockholders is not surprising. Indeed, where else would it go after all depositors, creditors, other claimants, and administrative expenses had been paid? One would hardly expect Congress to order an escheat. But that remaining vestige of the stockholders' rights can hardly be said to allow a wholesale invasion of the FDIC's control over proceedings.
 
 
 17
 Branch 's additional concern that the stockholders will otherwise go without protection does nothing to advance the argument. They, like all others who have some interest in recovering funds from the closed bank, must simply rely upon the FDIC to do its job. For similar reasons, we do not agree with the decisions of other courts which, without analysis, seem to have simply assumed that stockholders and others retain the ability to bring derivative actions after commencement of an FDIC receivership. See American Casualty Co. v. FDIC, 39 F.3d 633, 636-637 (6th Cir.1994); In re Sunrise Sec. Litig., 916 F.2d 874, 879, 889 (3d Cir.1990). Of course, we need not concern ourselves with what claims, if any, interested parties may have against the FDIC should it commit some wrongdoing. That issue is not before us.
 
 
 18
 Therefore, Pareto did not have standing to assert this derivative action against the FDIC and the former directors of the bank.
 
 CONCLUSION
 
 19
 When Congress enacted FIRREA, it put in place a tessellated scheme which was designed to provide an orderly method of ending the destabilization taking place in the financial industry, a destabilization that was destroying the institutions themselves and the rights of depositors, creditors, insurers, and investors. Part of that statutory mosaic vested great power in the FDIC, and that included giving it all of the rights, powers, and privileges of the failing institutions, their depositors, account holders, officers, directors, and stockholders. In fine, all of the accouterments of ownership were gathered into the hands of a single entity so that it would be in a position to develop a consistent approach to dealing with the institution's various problems.
 
 
 20
 While we are well aware of the fact that many individuals, both inside and outside of the banking industry, do not think that the results of FIRREA are cause for a joyful tintinnabulation, we are in no position to second guess Congress's choice. In short, we hold that the FDIC does have all of the stockholders' rights and powers to bring any derivative action. As a result, Pareto has no standing to proceed with this case.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 In reviewing these questions, we reject Pareto's argument that the district court was required to follow the decisions of the state court prior to removal, even when those decisions were legally erroneous. Once the district court decided that Pareto lacked standing, dismissal was required. See Cohen, 115 F.3d at 703; Vinci v. Waste Management, Inc., 80 F.3d 1372, 1376-77 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 1252, 137 L.Ed.2d 333 (1997); Shell Petroleum, N.V. v. Graves, 709 F.2d 593, 595-96 (9th Cir.1983). At times, the law of the case doctrine does apply to district courts. See United States v. Alexander, 106 F.3d 874, 876-78 (9th Cir.1997); Preaseau v. Prudential Ins. Co. of America, 591 F.2d 74, 79-80 (9th Cir.1979). But even at its most rigorous the doctrine does not require a district judge to follow an erroneous legal ruling of another trial judge. See Preaseau, 591 F.2d at 79. To hold otherwise would require district courts to adhere to legal errors and, thus, cause the parties to waste time engaging in unnecessary trials and us to waste time hearing unnecessary appeals
 
 
 [2]
 Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101-73, 103 Stat. 183 (1989)